STATE OF IOWA ex rel. CLIFFORD B. PAUL, County Attorney, Appellant, v. JAMES STRAKA, JR., et al., Appellees.

No. 39692.

DECEMBER 13, 1929.

*Clifford B. Paul,* for appellant.

*James E. Remley* and *E. L. Magruder,* for appellees.

KINDIG, J.—Briefly stated, the record in this case shows that James Straka, Jr., and his wife live on a farm one-half mile from Oxford Junction, in Jones County, Iowa. The title stands in James Straka, Jr., and James Straka, his father. The latter lives about two and one-half miles from his son. It is a proper inference from the evidence that the farm occupied by the son really belongs to the son, and that the father's ownership therein is largely, if not entirely, by way of security for advanced money. Both father and son were made defendants in the action, but no restraining order was issued against the father, and we will hereinafter refer to the son as the defendant. At the time of the transaction, the family consisted of the husband and wife and two small children, about 7 and 9 years of age. The defendant was born and reared in the vicinity of Oxford Junction. He is shown to have been a man of good moral character and reputation. There is no evidence whatever to show that he ever sold any intoxicating liquor, nor does he have any such reputation. The record tends to show that he is a sober and industrious young man. Apparently there have been more or less drinking and bootlegging in the surrounding territory.

On the 14th day of May, 1928, three officers of Jones County went to the home of the defendant, between 2 and 3 o'clock in the afternoon, looking for the defendant's hired man, George Schmaltz, who had been employed by the defendant only about two weeks. These officers had a warrant for George Schmaltz and a search warrant for the place. The record abundantly shows that these officers, in the proper discharge of their duties, were endeavoring to find Schmaltz, not the defendant, and the purpose of the search warrant was to find Schmaltz's liquor. The sheriff had some information concerning the sale of liquor by Schmaltz. When the officers arrived at the home of the defendant, they searched the premises, and found no liquor in the house. Part of the searching force went down the highway a short distance, where the defendant and others were working on the road. The man Schmaltz had been working there, but quit earlier in the day. He was nowhere to be found. There was parked in the defendant's barn an automobile, in which was found an empty bottle, and buried in some straw near this automobile several

bottles of liquor were found. Back of defendant's house, in what is sometimes called the "wash room," or "woodshed," the officers found eight empty one-gallon tin can containers, stacked in the room. There was also a pasteboard carton, divided for holding bottles, and in one compartment was a four-ounce screwtop bottle, which had about a tablespoonful of alcohol in it. The tin containers were empty, with the exception of drippings in one or two. Some of these were bright and new, and some were older. An analysis of the contents of the bottles found in the straw in the barn, and of the drippings in the empty cans, showed the contents to have been alcohol of substantially the same test. All of these articles were taken by the sheriff. Search was made for Schmaltz, but he was not found. Directions were left with the defendant and his wife that if, and when, Schmaltz should return for his clothing, the sheriff should be notified. A few days later, Schmaltz returned for his clothing, and the sheriff was promptly notified; but the agility of Schmaltz seems to have exceeded that of the officers. He was not caught. After Schmaltz had escaped entirely, this action was brought against the defendants.

The record is entirely devoid of any direct evidence that any of the defendants had any knowledge whatever of the presence of the intoxicating liquor in the barn. The defendant and his wife testified positively that they knew nothing about the presence of the liquor, and denied generally all the claims of the plaintiff covering any violation of law. The plaintiff rests its case largely upon the testimony regarding the empty cans found in the woodshed. The defendant frankly and promptly claimed these cans, asserting that he had bought some of them from some boys, and others he had picked up on the road. There is an abundance of evidence in the record to show that cans of this kind were frequently found along the roadway in the vicinity of Oxford Junction. The defendant owned a tractor and a washing machine. This washing machine was in what we have referred to as the "wash room," or "woodshed." A small funnel was also found in the woodshed, but the wife of the defendant testified that she used this in connection with the use of the washing machine, which is operated by a gasoline engine. The defendant is corroborated by disinterested witnesses, in the matter of his picking up some of these cans in the road, and in the matter of his

purchasing some of them from school boys, and in the matter of the use made of some of them as containers for oil, grease, dip, and other fluids used in and about the farm, but not intoxicating liquors. Mildred Straka, daughter of James Straka, testified that she had brought home some of those cans which were in evidence at the trial; that she had found them along the road in the ditch, on her way home from school. She also testified that she brought home the pasteboard box which was referred to as a "container," as she wished to use it for the purpose of keeping her doll dishes in it. She definitely described the ditch, and the place therein where she found the box, and testified that she put it in the woodshed. She said she never opened it, and didn't know there was anything in it.

Plaintiff's case rests entirely upon inferences to be drawn from the record, of which the foregoing recitation is a synopsis.

The defendants are industrious farmers, who stand well in the community in which they live. There is not the slightest direct evidence that any of them ever violated the prohibitory liquor law. They are not even shown to have been, in the slightest degree, addicted to the use of intoxicating liquors.

The officers of Jones County, Iowa, having become satisfied that intoxicating liquors were being sold in the vicinity of Oxford Junction, and having heard that Schmaltz was engaged in the liquor traffic, went out to the defendants' home for the express purpose of dealing with Schmaltz, and without even a suspicion, much less information, that the defendants had in any wise violated the law. The flight of Schmaltz, under the circumstances disclosed in the record, is significant. The inferences which could reasonably be drawn from the record in this case are not sufficient to overcome the direct testimony of the defendants, and the trial court should have so found.

On the plaintiff's appeal, the case is—*Affirmed.*

On the defendants' appeal, the case is—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.